562 So.2d 1288 (1990)
MISSISSIPPI STATE BAR
v.
Walter L. NIXON, Jr.
No. 02-BA-0231.
Supreme Court of Mississippi.
May 23, 1990.
*1289 EN BANC.

ON MOTION FOR CLARIFICATION OF ORDER OF DISBARMENT
PRATHER, Justice, for the Court:
Walter L. Nixon was suspended from the practice of law by this court in 1986 following his felony conviction in the federal courts. At the conclusion of his appeal of this federal conviction, this Court disbarred Nixon in 1989. The question presented by this motion is whether Nixon's disbarment in 1989 should be retroactive to the date of his prior suspension in 1986. If the Court answers in the affirmative, Mr. Nixon may now petition for reinstatement, as three years waiting time would have passed since the 1986 date. Finding that the Rules of Professional Conduct and this Court's decisions answer this question, this Court holds that Nixon's disbarment is not retroactive to the date of his suspension.

I.
On July 26, 1968, Walter Nixon assumed the office of the United States District Judge for the Southern District of Mississippi. On September 24, 1982, he was promoted to the office of Chief Judge of the U.S. District Court for the Southern District of Mississippi.
On February 9, 1986, Nixon was convicted in the United States District Court for the Southern District of Mississippi on two counts of perjury, in violation of 18 U.S.C. § 1623. On March 31, 1986, he was sentenced to serve a term of five (5) years imprisonment on each count, with such terms of imprisonment to run concurrently.
On April 18, 1986, the Mississippi State Bar (hereinafter Bar) filed a formal complaint urging this Court to disbar the respondent and revoke his privilege to practice law in the State of Mississippi as a result of these criminal convictions. Authority for this petition is found in Rule 6(a) of the Rules of Discipline for the Mississippi State Bar. Answering this Petition for Disbarment, Nixon filed a motion to dismiss, requesting dismissal, or alternatively, a stay of any action for indefinite suspension or for disbarment. At the same time, the Bar filed a motion for indefinite suspension, asking this Court to remove the respondent's name from the membership rolls of the Mississippi State Bar and to suspend his license to practice law pending the disposition of the disciplinary proceedings, or until the respondent's convictions were reversed, or his appeals had been unsuccessfully concluded. On September 24, 1986, this Court entered an order indefinitely suspending Nixon from the practice of law in this state. See Mississippi State Bar v. Nixon, 494 So.2d 1388 (Miss. 1986).
Following his sentencing on March 31, 1986, in the United States District Court, Nixon appealed to the U.S. Court of Appeals for the Fifth Circuit. On April 30, 1987, the Court of Appeals issued its opinion affirming the convictions. See United States v. Nixon, 816 F.2d 1022 (5th Cir.1987). On September 8, 1987, his petition for rehearing was also denied. See United States v. Nixon, 827 F.2d 1019 (5th Cir.1987). He then filed a petition for writ of certiorari to the United States Supreme Court, which was denied on January 19, 1988. See Nixon v. United States, 484 U.S. 1026, 108 S.Ct. 749, 98 L.Ed.2d 762 (1988).
Following the U.S. Supreme Court's denial of the writ of certiorari on January 19, 1988, the U.S. Court of Appeals for the Fifth Circuit issued a mandate on February 18, 1988, ordering the respondent's convictions affirmed. Subsequently, on March 1, 1988, U.S. District Court Judge James H. Meredith entered an order directing that Nixon surrender himself to an institution designated by the United States Bureau of Prisons. On March 8, 1988, Nixon filed a motion to vacate and set aside his conviction and for a new trial in the United States District court for the Southern District of Mississippi, pursuant to 28 U.S.C. § 2255.
*1290 While these proceedings were pending in the Federal Court, on April 25, 1988, the State Bar filed a Motion for Reconsideration [of Nixon's suspension] and For Entry of an Order of Disbarment. On May 27, 1988, Nixon responded with a second request to stay proceedings pending final resolution of his Motion to Vacate Convictions and for a New Trial filed in U.S. District Court. In response to this motion, this Court, on August 25, 1988, entered an order sustaining the respondent's motion to stay proceedings, to which order the Bar had agreed. In this order, this Court further ruled that the indefinite suspension originally issued on September 24, 1986, against the respondent would remain in full effect until further order of the Court.
The hearing on the March 1988, motion for a new trial in federal court proceeded to trial. This motion was overruled on December 19, 1988. See Nixon v. United States, 703 F. Supp. 538 (S.D.Miss. 1988). Nixon then appealed the District Court's ruling to the Fifth Circuit Court of Appeals, which also denied him relief on August 17, 1989. See Nixon v. United States, 881 F.2d 1305 (5th Cir.1989). The respondent subsequently decided not to pursue any further challenges to his convictions for the crime of perjury. Therefore, his convictions became final.
Once his appeals had been considered without reversal and subsequent to August 17, 1989, this Court addressed the Bar's Motion for Reconsideration of its formal complaint to disbar Nixon. On November 22, 1989, an order was entered disbaring Nixon from the practice of law in the State of Mississippi. No petition for rehearing was filed pursuant to Rule 40 of the Supreme Court Rules. On December 2, 1989, the motion presently before the Court was filed, wherein the respondent asked that he be considered eligible to apply for reinstatement and readmission to the practice of law three years from the date of his indefinite suspension, which was September 24, 1986.

II.
Regarding Nixon's claim that he was effectively disbarred by this Court's order of suspension on September 24, 1986, and thus unable to practice law, this statement by the respondent does not present the entire picture. Nixon had been a federal judge since July 26, 1968. As a member of the federal bench, he was prohibited from practicing law anyway. See 28 U.S.C. § 454; Audett v. United States, 265 F.2d 837, 840 (9th Cir.1959). Therefore, his argument about being effectively disbarred by virtue of this Court's order of suspension is vacuous. As a federal judge he was prohibited from practicing law under any circumstances, and the order of suspension had little or no practical effect on his ability to practice law. Thus, the order of suspension imposed no additional burden on the respondent, contrary to his assertions.
Nixon also urges that this Court follow the lead of the Supreme Court of Louisiana, which accepted his petition for leave to surrender license to practice law filed on January 20, 1989, wherein he requested that the effective date of the surrendering of his license and disbarment be made retroactive to April 6, 1988. By virtue of an order issued on January 26, 1989, the Supreme Court of Louisiana did in fact disbar the respondent retroactively to April 6, 1988. He urges this Court to give full faith and credit to the Louisiana Supreme Court's decision. However, this Court is governed by the Mississippi Rules of Discipline and retains "exclusive inherent" jurisdiction over an attorney and his license to practice law in this state. Mississippi State Bar v. Nixon, supra; Mississippi State Bar v. Phillips, 385 So.2d 943, 944 (Miss. 1980).
Additionally, Nixon elected to file a motion to stay his disbarment on two different occasions: (1) in filing a Motion to Dismiss, or in the alternative, to stay disbarment dated May 9, 1986, and (2) on May 26, 1988, by Motion to Stay Proceedings pending his Motion for a New Trial. No one challenges his decision to pursue the appellate process. This election afforded him the advantage of pursuing his appellate procedures as a suspended, but not disbarred, attorney *1291 for whatever strategic advantage that fact affords. Without his request for consideration, this Court would have had only the Bar's request for disbarment and would have responded to that request had Nixon not asked for these two stay orders.

III.
Under his constitutional claim, Nixon asserts that an additional three year waiting period would violate the due process and equal protection clause of the Fourteenth Amendment of the United States Constitution. The concept of equal protection, he asserts, requires that uniform treatment be afforded persons standing in the same relation to the government action being challenged. Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964).
The thrust of Nixon's claim is this: "[T]hat an attorney convicted of a felony who decides, for whatever reason, not to appeal should not be entitled to apply for reinstatement any sooner than an attorney convicted of a felony who asserts his right to file a legitimate appeal." He claims that, as a result of the length of the appellate process, an attorney who chooses to appeal a conviction will invariably have to wait a longer period of time before being reinstated than an attorney who chooses not to appeal a conviction.
In United States v. Freidland, 502 F. Supp. 611 (D.C.N.J. 1980), aff'd without opinion 672 F.2d 905 (3rd Cir.1981), the District Court held that "a court constitutionally may suspend a member of its Bar summarily on the basis of a felony conviction even though that conviction has not been finalized by completion of the appellate process." Id. at 616. See also United States v. Jennings, 724 F.2d 436, 449-450 (5th Cir.1984). Other cases have reached a similar result. See Matter of Simon, 146 A.D.2d 393, 540 N.Y.S.2d 791, 792-793 (1989); Carter v. Romano, 426 A.2d 255, 255-257 (R.I. 1981); International Longshoremen's Association v. The Waterfront Commission of New York Harbor, 495 F. Supp. 1101, 1115 (S.D.N.Y. 1980). This concept has even been upheld in the context of disciplining a psychiatrist. See Damino v. O'Neill, 702 F. Supp. 949, 953 (E.D.N.Y. 1987).
Furthermore, the case relied on heavily by Nixon to support his position, In Re Ming, 469 F.2d 1352 (7th Cir.1972), has been criticized by or distinguished from several of the above noted cases. See e.g., United States v. Friedland, 502 F. Supp. 611, 613-615 (D.C.N.J. 1980) (Citing Mitchell v. Association of Bar of City of New York, 40 N.Y.2d 153, 386 N.Y.S.2d 95, 351 N.E.2d 743 [1976]).
It is the opinion of this Court that all disbarred attorneys are treated equally; the disparity of time arises when an attorney resists the disbarment pending his appellate procedures as in this case. Had the attorney accepted the disbarment following his conviction, no delay in entering a final order of disbarment would have resulted. Therefore, this Court finds no unequal treatment or denial of due process in this case.

IV.
The procedure to be followed seeking reinstatement to the Bar after disbarment is found in Rule 12.1, Rules of Discipline for the Mississippi State Bar. Rule 12.1 of the Disciplinary Rules provides that "the petition for reinstatement shall not be filed until three (3) years after the date the order of disbarment became final." The respondent asserts that Rule 12.1 is aimed only at those disbarments resulting from proceedings before a complaint tribunal under Rule 8, and not those automatic disbarments under Rule 6.
However, any differences between Rule 8 and Rule 6(a) have no effect on the operation of Rule 12.1. Rule 12.1 explicitly states that any attorney who has been disbarred must wait three (3) years from the date the order of disbarment becomes final before filing a petition for reinstatement.
In McIntosh v. Mississippi State Bar, 449 So.2d 1203 (Miss. 1984), this Court had the opportunity to consider the petition of reinstatement of an attorney who had been previously suspended and subsequently disbarred. McIntosh had been suspended on *1292 November 25, 1980, and a Consent Order of Disbarment was signed by the Chief Justice of this Court on March 12, 1982.
On February 27, 1984, McIntosh filed a Petition for Reinstatement and the Bar responded by filing a Motion to Dismiss the Petition on March 1, 1984. In his response to the Bar's motion, McIntosh argued that his suspension and disbarment predated the adoption of the Rules on September 7, 1983, and that since the Rules had no retroactive provision, they should have no applicability until after January 1, 1984, their effective date.
Both McIntosh and the Bar noted at the time that his Petition for Reinstatement was filed less than three (3) years after the Disbarment Order of March 12, 1982, was entered. McIntosh argued that the three-year waiting period should run from and after November 25, 1980, the date he was suspended from the practice of law by this Court. This Suspension Order was entered pursuant to Miss. Code Ann. § 73-3-339, (1972), which is the predecessor of Rule 6.
The predecessor of Rule 12 of the Rules of Discipline is Miss. Code Ann. § 73-3-337, (1972), both of which read in pertinent part as follows:
Any time after the expiration of three (3) years from and after the date of the final judgment of disbarment, the convicted attorney may petition the court for reinstatement... .
In McIntosh, the Court stated that the three (3) year period of time before a Petition for Reinstatement could be filed began running "from the order of disbarment and there is no `relation back.'" 449 So.2d at 1204. Nixon compares his situation to that of a criminal defendant who unsuccessfully appeals his conviction. He notes that a criminal defendant is always given credit for time served during the pendency of his appeal, and claims that he should receive such "credit" as well. However, disciplinary proceedings are only "quasi-criminal" in nature. Mississippi State Bar v. Attorney L, 511 So.2d 119, 121-122 (Miss. 1987); Levi v. Mississippi State Bar, 436 So.2d 781, 783 (Miss. 1983), and not all criminal rules apply.
Nixon contends that Mississippi State Bar v. Phillips, 385 So.2d 943 (Miss. 1980), provides support for his position, despite this Court's holding in McIntosh that the two cases were consistent. Nixon makes much of the fact that in Phillips, the three-year period was calculated from the day the attorney was suspended (September 4, 1979) rather than from the day he was finally disbarred. (April 2, 1980). However, this action was taken by the Court because the attorney should have been disbarred by the Tribunal on September 4, 1979. Phillips, 385 So.2d at 951. Thus, McIntosh and Phillips are consistent. In the instant case, Nixon asked for and received a stay of the final order of disbarment which delayed his final order of disbarment. The holding in McIntosh is applicable to the case sub judice.
Lastly, it should be noted that Nixon has chosen to characterize the three-year period between his final disbarment and a potential Petition for Reinstatement as an "additional" three-year waiting period, or an "enhanced" sentence. The three-year period he must wait is plainly stated as commencing "after the date the order of disbarment became final" in the Rules of Discipline.
Retroactivity to the date of suspension has been applied when the Tribunal erred in entry of a suspension order rather that a final disbarment order. Here, Nixon's initative delayed the entry of the final order. This Court must apply the Rules of Discipline equally and we must emphasize that retroactivity cannot be applied when the attorney seeks a stay of the final order. In this case, the order of disbarment for the respondent became final on November 22, 1989; therefore, Nixon is not eligible to apply for reinstatement until November 22, 1992.

V.
Much of Nixon's argument under his final point is devoted to what could best be characterized as "mercy" considerations. Vining v. Mississippi State Bar Association, 508 So.2d 1047, 1049 (Miss. 1987). *1293 The State Bar points out that such concerns are more properly considered as mitigating or extenuating factors when the issue of discipline is originally considered, and this Court agrees.

VI.
For the foregoing reasons, it is the holding of this Court that the Respondent, Walter L. Nixon, Jr., is not eligible to apply for reinstatement to practice law in the State of Mississippi before November 22, 1992.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and ROBERTSON, J., concur.
ANDERSON, J., dissents without written opinion.
DAN M. LEE, P.J., and SULLIVAN, PITTMAN and BLASS, JJ., not participating.