# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-KA-01415-SCT

*CRAIG DEANDRE WILLIAMS a/k/a CRAIG
WILLIAMS a/k/a CRAIG D. WILLIAMS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/25/2012 |
| TRIAL JUDGE: | HON. ROBERT P. CHAMBERLIN |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: W. DANIEL HINCHCLIFF |
| | GEORGE T. HOLMES |
| | DAVID CLAY VANDERBURG |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LAURA HOGAN TEDDER |
| | JOHN R. HENRY, JR. |
| DISTRICT ATTORNEY: | JOHN W. CHAMPION |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 03/27/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., PIERCE AND KING, JJ.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1.     Craig Deandre Williams was convicted of armed robbery in the DeSoto County

Circuit Court following a jury trial. Williams appeals his conviction, claiming: (1) a broken

"BB gun" does not meet the definition of a deadly weapon for purposes of Mississippi's

armed-robbery statute; (2) the trial court failed to instruct the jury regarding the legal

definition of a deadly weapon; and (3) because the jury was instructed that they "need not

actually see a deadly weapon," they were misinstructed on the legal necessity of the use of a deadly weapon. Finding no merit in any of these contentions, we affirm Williams's armed-robbery conviction.

**FACTS**

¶2.    On March 10, 2011, narcotics agents with the DeSoto County Sheriff's Department organized a controlled drug-and-gun buy between Rodney Long and Williams, to take place at the Tulane Park Apartments in Horn Lake, Mississippi. Long, a confidential informant working off a previous drug charge, had informed the agents that he could "score drugs and a gun" from Williams.

¶3.    At a pre-buy location, the agents wired Long with audio and video surveillance equipment and provided him $280 in cash for the transaction. From there, Long drove his vehicle to the Tulane Park Apartments. The agents followed Long in separate vehicles, staying close enough behind to monitor the transaction via the audio transmitter concealed inside Long's clothing.

¶4.    When Long arrived at the apartment complex, he met Williams in an upstairs breeze-way located outside apartment building number 800. Williams asked Long if he had brought the money. Long said, "Yes." Long then asked Williams if he had brought "the pills and the gun." Williams said, "Yeah, I got it." Long pulled the buy money out of his pocket and began counting it in front of Williams. At that point, Williams pulled from his pocket what Long believed was a black handgun; shoved it in Long's stomach; and told Long to give him "everything" and nobody would get hurt. As Long handed Williams the money, Williams grabbed the money, hit Long on the side of the head with the gun, and ran from the scene.

2

Stunned and scared, Long shouted, "I just got robbed." Hearing this from the audio transmission, the agents immediately proceeded to the scene. En route, one agent saw an African-American male wearing a red and black hooded sweatshirt running eastbound across the apartment complex. A foot chase ensued, ending when Williams ran into a nearby shed. The agent radioed for backup and secured the area. While in the shed, Williams, who was age fifteen at the time, called his mother from his cellular phone. Williams's mother came to the scene, and Williams surrendered to the agents shortly thereafter.

¶5. During the robbery investigation, Commander Roger Hutchins found $280 hidden in Williams's shoe. Back at the apartment complex, Deputy Keith Post noticed what appeared to him to be a Glock .45-caliber semiautomatic handgun lying in a flower pot in front of Apartment 701. Deputy Post reported what he had found to Deputy Kenny Free. Deputy Free came and retrieved the item and processed it for evidence. The item was determined to be a broken pellet/BB gun. During questioning, Williams admitted to the robbery and that the pellett/BB gun was his.

¶6. A DeSoto County grand jury indicted Williams for armed robbery under Mississippi Code Section 97-3-79 (Rev. 2006). A DeSoto County jury found Williams guilty of armed robbery based on evidence that included: testimony from Long and agents involved in the investigation; Williams's confession; a recording of the audio and video surveillance; the money found in Williams's shoe; and the pellet/BB gun submitted into evidence. Upon Williams's conviction for armed robbery, the trial court sentenced Williams to twenty-five years in the custody of the Mississippi Department of Corrections (MDOC), with twelve years to serve, followed by thirteen years post-release supervision, with five years reporting.

3

¶7.     Williams timely appeals his conviction. Additional facts, as necessary, will be added during our discussion of the issues, which we relate verbatim as set forth in Williams's appellate brief.

## DISCUSSION

I.      **WHETHER THE BROKEN BB GUN INTRODUCED INTO EVIDENCE WAS A DEADLY WEAPON WITHIN THE MEANING OF THE ARMED-ROBBERY STATUTE, WHERE THE ONLY PROOF ADDUCED SHOWED THE TOY WAS BROKEN AND WHEN USED AS A CLUB DID NOT CAUSE SERIOUS BODILY INJURY.**

¶8.     Section 97-3-79, under which Williams was tried and convicted, states in pertinent part:

> Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery . . . .

Miss. Code Ann. § 97-3-79 (Rev. 2006).

¶9.     Citing *Duckworth v. State*, 477 So. 2d 935 (Miss. 1985), Williams acknowledges that whether a particular item is actually a "deadly weapon" as contemplated by statute, has long been held to be a question for the jury's determination. *See Duckworth*, 477 So. 2d at 938 (affirming armed-robbery conviction where question whether a blank starter pistol was a deadly weapon was properly resolved by the jury). Williams also acknowledges that both this Court and the Court of Appeals have affirmed armed-robbery convictions where a BB gun was used during the commission of a robbery. *See Saucier v. State*, 562 So. 2d 1238, 1246 (Miss. 1990), *overruled on other grounds* (finding that a broken pellet gun weighing

4

"three or four pounds[,]" which could be used as a club to inflict serious bodily injury, met the definition of a deadly weapon under Section 97-3-79); *Thomas v. State*, 936 So. 2d 964, 967 (Miss. Ct. App. 2006) (affirming armed-robbery conviction where "[t]here was testimony that a pellet gun can inflict serious bodily injury"). Williams contends, however, the evidence here is uncontroverted that the pellet/BB gun in question was broken and inoperable, which distinguishes his case from *Thomas*. Williams further contends that no proof was adduced for the jury as to the pellet/BB gun's weight, and, even though the pellet/BB was used as a club, no serious bodily injury resulted; thus, *Saucier* is inapplicable.

¶10.　In his argument on appeal, Williams makes much of the fact the pellet/BB gun entered into evidence at trial was broken. Unlike the *Saucier* Court, we do not have the actual pellet/BB gun before us on appeal, and the record does not indicate what exactly Williams means by "broken." Nevertheless, this *fact* was for the jury to contend with, not this Court. Based upon the record before us, one reasonably can infer from the additional facts of this case that what broke the pellet/BB gun was the manner in which it was used. That no serious bodily injury resulted from its use simply goes to the victim's good fortune, not to Williams's culpability under Section 97-3-79. And the fact that testimony was given as to the gun's weight is of no moment to this Court. The pellet/BB gun was submitted to the jury for its inspection and consideration of the object's propensity for harm.

¶11.　In *Cittadino v. State*, 199 Miss. 235, 24 So. 2d 93 (1945), this Court vociferously articulated the legislative intent behind our armed-robbery statute. In addressing the argument that the State had failed to establish the existence of a deadly weapon because there

5

was no proof that a firearm used in a robbery was loaded or that its potential use as a bludgeon was not intimated, the *Cittadino* Court said this:

> The evil sought to be abated was the employment of such weapons as are held generally, and therefore by the victim, to be deadly. We do not have a case where the weapon has been shown not to be deadly because not loaded or otherwise incapable of use as a firearm. Nor do we treat of the manner of its use since it was not used to effect a battery but accomplished its purpose by its challenge that the actor was ready, able and quite willing to make it deadly. The limited option, made proverbial by the techniques of a ruthless banditry, of money or life is a representation by the culprit that the weapon is deadly and that he will kill because he can kill. This representation, whether voiced or not, is what the bandit expects or insists that the victim comprehend and so accept as literally true, whereby he is immobilized by a reasonable fear. This is the substance from which a genuine inference of the deadly character of the weapon may be formed.
> . . . .
>
> These considerations are not advanced to fortify doubts as to the prima facie sufficiency of the proof of deadly character where the weapon used is, as such proved or universally recognized as in that category and exhibited for the purpose of effecting robbery through a fear of immediate injury to the person. The law has from earliest times recognized the right of the victim to justify retaliation by extreme measures upon the reasonable assumption that the threat and danger are real because they have intentionally been so represented by the assailant. If the citizen may so presume in his own defense, the State may do so in defense of society, of which he is a representative unit. The provocation of bloodshed, even at the hands of the victim, was not unworthy of legislative notice. The [trial] court was not, therefore, in error in allowing the jury to draw the inferences which appellant himself intended the victim to draw.

*Cittadino*, 24 So. 2d at 95-96.

¶12. Citing *Cittandino*, *Duckworth*, and other cases, the *Saucier* Court found the BB gun at issue before it was, as a matter of law, a "deadly weapon" within the meaning of the armed-robbery statute. *Saucier*, 562 So. 2d at 1246. The Court qualified its holding, stating: "Of course, the constitution precludes a directed verdict for the prosecution on any essential element of the offense charged. Accordingly, we may only hold that this weapon was not

6

such that Saucier was entitled to have the issue taken from the jury and decided in his favor."

*Id.*

¶13. Here, Williams makes the same argument(s) asserted before and rejected by the *Cittadino*, *Duckworth*, and *Saucier* Courts. In line with those holdings, we find Williams was not entitled to a directed verdict on the question of whether the pellet/BB gun constituted a "deadly weapon" under Section 97-3-79. This issue is without merit.

    **II.    WHETHER THE FAILURE OF THE TRIAL COURT TO INSTRUCT THE JURY REGARDING THE DEFINITION OF A DEADLY WEAPON, A NECESSARY ELEMENT TO THE CRIME OF ARMED ROBBERY, DENIED WILLIAMS A FAIR TRIAL.**

    **III.    WHETHER THE INSTRUCTION GIVEN THE JURY THAT [THE VICTIM] "NEED NOT ACTUALLY SEE A DEADLY WEAPON" WAS CONFUSING AND THEREBY MISINSTRUCTED THE JURY ON THE LEGAL NECESSITY OF AN ACTUAL DEADLY WEAPON BEING UTILIZED IN THE CRIME OF ARMED ROBBERY.**

¶14. We address issues two and three together. Williams first contends that, because the trial court failed to provide an instruction legally defining for the jury a deadly weapon, the necessity of an actual deadly weapon as required by Section 97-3-79 was obviated in this case. Williams further contends the error was compounded when the trial court instructed the jury at the State's request that the victim need not see a deadly weapon.

¶15. At the outset, we note that Williams did not object to any of the jury instructions complained of on appeal. Nor did Williams present to the trial court any of the arguments he presents here. Therefore, Williams's points of contention are subject to plain-error review. Under our plain-error doctrine, there has to be a finding of error, and that error must

7

have resulted in a manifest miscarriage of justice for reversal to occur. *Gray v. State*, 549 So. 2d 1316, 1321 (Miss. 1989).

¶16.    "This Court reads jury instructions as a whole to determine whether the jury was fully and properly instructed according to the applicable law." *Clark v. State*, 40 So. 3d 531, 544 (Miss. 2010). "[I]f all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law, no error results." *Id*. (quoting *Davis v. State*, 18 So. 3d 842, 847 (Miss. 2009)).

¶17.    The law, of course, requires the jury "must be instructed regarding the elements of the crime which the defendant is charged." *Hunter v. State*, 684 So. 2d 625, 635 (Miss. 1996). We find that jury instruction S-1 does so. It reads as follows:

> The Defendant [Willams], has been charged with the crime of Robbery with a Deadly Weapon, also known as Armed Robbery. If you find from the evidence in this case, beyond a reasonable doubt that:
>
> 1)    On or about March 10, 2011, the Defendant [Williams],
>
> 2)    Did take from the presence or from the person of [Long],
>
> 3)    Certain personal property, being approximately $280.00 in cash money, which was the personal property of the DeSoto County Sheriff's Department, and
>
> 4)    Such taking was against the will of [Long], and
>
> 5)    As a means of taking the cash money, [Williams] put [Long] in fear of immediate injury to his person by the exhibition of a deadly weapon, to-wit: a pistol;
>
> then you shall find [Williams], guilty of Robbery with a Deadly Weapon.
>
> If the State has failed to prove any one or more of the above listed elements beyond a reasonable doubt, then you shall find the defendant not guilty.

8

¶18. Williams, however, contends that the trial court also should have given an instruction similar to the one upheld by this Court in **Duckworth** and later in **Davis v. State**, 530 So. 2d 694 (Miss. 1988), defining what legally constitutes a deadly weapon. The instruction provided in those cases, generally, reads as follows:

> It is a question of fact for the Jury to determine whether the [instrument] claimed to have been used by the [Defendant] was a deadly weapon in the manner claimed to have been used in this case.
>
> A deadly weapon may be defined as any object, article or means which, when used as a weapon is, under the existing circumstances, reasonably capable or likely to produce death or serious bodily harm to a human being upon whom the object, article or means is used as a weapon.

*See*, *e.g.*, **Davis**, 530 So. 2d at 700 (citing **Duckworth**, 477 So. 2d at 938).

¶19. We agree with Williams that this type instruction better informs the jury that the question as to whether a particular instrument constitutes a deadly weapon lies with the jury. But we cannot say that, because this particular instruction was not given, a manifest miscarriage of injustice resulted in this case. Again, jury instruction S-1 properly set forth all the elements of the crime of armed robbery. Williams's contention to the contrary, the instruction is not peremptory. It does not assume or charge the jury that the pellet/BB gun was in fact a deadly weapon. And it clearly gives the jury the option of finding that Williams did not employ the use of a deadly weapon.

¶20. Still, Williams argues that, because of jury instruction S-2, the jury was allowed to infer that the pellet/BB gun at issue need not have been an actual deadly weapon. Jury instruction S-2 instructed that: "When a defendant makes an overt act and the victim

9

reasonably believes that the defendant has a deadly weapon, it is not required that the victim actually see a deadly weapon to support a conviction for armed robbery."

¶21. This instruction is based on this Court's holding in *Dambrell v. State*, 903 So. 2d 681 (Miss. 2005), where we overruled *Gibby v. State*, 744 So. 2d 244 (Miss. 1999). In *Gibby*, this Court held that the victim's assumption that the defendant possessed a gun was insufficient to prove the exhibition of a deadly weapon under Section 97-3-79. *Gibby*, 744 So. 2d at 245. The *Dambrell* Court held:

> After careful consideration, this Court overrules *Gibby v. State*, 744 So. 2d 244 (Miss. 1999). We find that when a defendant makes an overt act and a reasonable person would believe that a deadly weapon is present, there is no requirement that a victim must actually see the deadly weapon in order to convict pursuant to [Section] 97-3-79. Therefore, a victim is not required to have "definite knowledge" of a deadly weapon in the sense that the weapon must actually be seen by the victim's own eyes.

¶22. Williams argues that the *Dambrell* decision (where proof existed of an actual deadly weapon used by the defendant) did not intend to do away with the statutory requirement that a deadly weapon be used in an armed robbery, yet that seems to be an unintended consequence. Williams contends that the jury in this case was told implicitly by the State that all the law requires to convict someone of armed robbery is what the victim perceives.

¶23. We do not find that to be the case. Nor do we find *Dambrell* controlling in this instance. The State presented direct evidence of the actuality of a deadly weapon. And even though the State needlessly presented a circumstantial theory of a deadly weapon through jury instruction S-2, this was inconsequential, since the question of whether the pellet/BB gun constituted a deadly weapon was submitted to the jury for its determination.

¶24. Accordingly, we find issues two and three are without merit.

10

## CONCLUSION

¶25.   We affirm Williams's armed-robbery conviction and the sentence imposed by the DeSoto County Circuit Court.

¶26.   **CONVICTION OF ARMED ROBBERY AND SENTENCE OF TWENTY-FIVE (25) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TWELVE (12) YEARS TO SERVE AND THIRTEEN (13) YEARS POST-RELEASE SUPERVISION, WITH FIVE (5) YEARS REPORTING, WITH CONDITIONS, AFFIRMED.**

WALLER, C.J., RANDOLPH, P.J., LAMAR, KITCHENS, KING AND COLEMAN, JJ., CONCUR. DICKINSON, P.J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED BY CHANDLER, J.

DICKINSON, PRESIDING JUSTICE, CONCURRING IN PART AND IN RESULT:

¶27.   Because I continue to disagree with this Court's holding in *Dambrell v. State*,[1] and because the trial judge in this case granted the State a jury instruction based on that decision, I concur in part and result.

¶28.   Mississippi's armed-robbery statute requires the State to prove that the defendant facilitated a robbery by "exhibition of a deadly weapon."[2] And in *Gibby v. State*, we held that the statute meant what it said, and that a robbery victim's *assumption* that the defendant possessed a weapon would not substitute for actual exhibition of the weapon during the robbery.[3]

---

[1] *Dambrell v. State*, 903 So. 2d 681 (Miss. 2005).

[2] Miss. Code Ann. § 97-3-79 (Rev. 2006).

[3] *Gibby v. State*, 744 So. 2d 244, 245 (Miss. 1999).

¶29. But in *Dambrell*, the defendant – who had entered a store, intending to commit a robbery – carried with him a knife that was completely concealed by a towel wrapped around his hand.[4] He was convicted of armed robbery, and he appealed, arguing that he did not exhibit any weapon at all.

¶30. A majority of this Court adopted the concept of constructive exhibition, that is to say, the State no longer was required to prove the defendant actually exhibited a deadly weapon (as required by the statute), so long as the State could prove that "a defendant [made] an overt act and a reasonable person would believe that a deadly weapon [was] present. . . ."[5]

¶31. Believing that statutes should be applied as they were written by the Legislature, I dissented in *Dambrell*. As I stated in that case, criminal statutes must be strictly construed in favor of the accused, and the majority opinion impermissibly abrogated a statutory element of armed robbery.[6] Simply put, one cannot commit armed robbery without actually exhibiting a deadly weapon.[7]

¶32. In the case before us today, the trial court granted a jury instruction based on this Court's *Dambrell* holding. Because I believe *Dambrell* was erroneously decided, I cannot join the majority's conclusion that the trial court did not err by granting that instruction. That

---

[4]*Dambrell*, 903 So. 2d at 682.

[5]*Id.* at 683.

[6]*Id.* at 689, 690 (Dickinson, J., dissenting) (citing *Conley v. State*, 790 So. 2d 773, 809 (Miss. 2001)).

[7]Miss. Code Ann. § 97-3-79 (Rev. 2006).

said, the defendant in this case actually exhibited a deadly weapon, so I join the majority in part, and in result.

**CHANDLER, J., JOINS THIS OPINION**.