# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-00862-COA

**LEONARD CURETON A/K/A LEONARD BERNARD CURETON**  APPELLANT

v.

**STATE OF MISSISSIPPI**  APPELLEE

DATE OF JUDGMENT:  06/12/2018
TRIAL JUDGE:  HON. LEE J. HOWARD
COURT FROM WHICH APPEALED:  LOWNDES COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:  OFFICE OF STATE PUBLIC DEFENDER
  BY: W. DANIEL HINCHCLIFF
    GEORGE T. HOLMES
ATTORNEY FOR APPELLEE:  OFFICE OF THE ATTORNEY GENERAL
  BY: BARBARA WAKELAND BYRD
DISTRICT ATTORNEY:  SCOTT WINSTON COLOM
NATURE OF THE CASE:  CRIMINAL - FELONY
DISPOSITION:  AFFIRMED - 03/24/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE BARNES, C.J., GREENLEE AND McDONALD, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1. Following a jury trial, Leonard Cureton was convicted of aggravated assault for stabbing Steven Jennings in front of a local grocery store in Columbus, Mississippi. On appeal, Cureton argues that the trial court erred by giving "Jury Instruction S-2." Finding no error, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2. On the night of September 16, 2011, Steven Jennings went to a store called M&M

Grocery to purchase a snack and drink. When he arrived at the store, Jennings saw Cureton standing outside. Jennings completed his purchase and started to exit the store. On his way out, Cureton, with a steak knife in hand, charged and stabbed Jennings twice in the head. Jennings testified that he defended himself by forcing Cureton to the ground while reaching for Cureton's knife. Jennings further testified that he got cut or bit on his right hand during the struggle. The store clerk, Tobias Saddler, called the police.

¶3. Saddler testified that Cureton and Jennings often frequented M&M Grocery. On the night in question, Saddler saw Cureton walk into the store and ask Jennings for money. Jennings declined. According to Saddler, this made Cureton upset as he left the store. A few moments later, Cureton re-entered the store and walked toward Jennings with a "pocketknife or something" in his hand. Saddler testified that other customers, including kids, were in the store, so Jennings, in a protective measure, "caught" Cureton's hand and "took him towards the door." When Saddler approached the door, he saw both Cureton and Jennings on the ground. Cureton was not moving and Jennings was using his shirt to apply pressure to his head.

¶4. Shortly after Saddler called the police, the Columbus Police Department (CPD) arrived and secured the scene. Officer Kenneth Brewer, one of the first responders, testified that when he arrived, he noticed Cureton lying on the ground and Jennings wearing a white shirt wrapped around his head. He further testified that a knife was on the ground near the two men. Officer Brewer assisted the EMTs with loading Cureton into an ambulance and traveled with Cureton to the hospital.

2

¶5.     Raymond Hackler, who was employed as an investigator with the CPD at the time of the incident, testified that he was dispatched to the scene to investigate the stabbing. When he arrived, Officers Strevel and Brewer explained that Cureton had stabbed Jennings in his head. Both men were injured during the altercation and transported to the hospital as a result. Hackler then testified that he processed the scene, took crime-scene photos, recovered the knife, and gathered a statement from Saddler. After he processed the scene, Hackler reported to the hospital where he documented Jennings's injuries.

¶6.     Dr. Keith McCoy, Jennings's primary ER physician, testified that Jennings endured two lacerations to his scalp and one laceration to his left flank below the armpit area. According to Dr. McCoy, Jennings did not suffer from deep penetrating injuries, but he did receive pain medication, antibiotics, and staples to close the wounds. After Dr. McCoy testified, the State rested its case-in-chief.

¶7.     Cureton testified in his own defense. According to Cureton, he was "panhandling" outside of the grocery store on the night in question. Cureton testified that he and Jennings got into an argument about Jennings's girlfriend. Because of the argument, Cureton claimed that Jennings approached him in a "threatening manner" and "in attack mode." Cureton then conceded he hit Jennings twice in the head. On cross-examination, Cureton dismissed a pre-trial statement he had given to the CPD on September 21, 2011. Cureton further alleged his statement was coerced. No other witnesses corroborated Cureton's testimony. However, upon Cureton's request, three additional witnesses, each of whom had worked for the CPD at the time of the proceedings, testified, but declined having any knowledge of the events that

3

resulted in the charge against him.  The defense then rested.

¶8.    Upon completion of the trial, the jury found Cureton guilty of aggravated assault under Mississippi Code Annotated section 97-3-7(2) (Supp. 2011).  At a subsequent hearing, the circuit court judge sentenced Cureton to serve a twenty-year term in the Mississippi Department of Corrections as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev. 2006).  Cureton moved for a new trial, but that motion was denied.  Cureton filed his notice of appeal.

## STANDARD OF REVIEW

¶9.    This court reviews a trial court's decision to give or refuse jury instructions for an abuse of discretion.  *Moody v. State*, 202 So. 3d 1235, 1236-37 (¶7) (Miss. 2016).  "The instructions are to be read together as a whole, with no one instruction to be read alone or taken out of context."  *Young v. State*, 891 So. 2d 813, 819 (¶16) (Miss. 2005) (quoting *Howell v. State*, 860 So. 2d 704, 761 (¶203) (Miss. 2003)).  There is no reversible error if the jury instructions, when read together, fairly announce "the law of the case and create no injustice."  *Carson v. State*, 212 So. 3d 22, 28 (¶22) (Miss. 2016) (citing *Newell v. State*, 49 So. 3d 66, 73 (¶20) (Miss. 2010)).

## DISCUSSION

¶10.   In his only assignment of error, Cureton argues the trial court erred by giving "Jury Instruction S-2."  At trial, Cureton did not object to "Jury Instruction S-2."  "To preserve a jury instruction issue on appeal, the defendant must make a specific objection to the proposed instruction to allow the circuit court to consider the issue."  *Caffie v. State*, 269 So. 3d 1203,

4

1205 (¶11) (Miss. Ct. App. 2018) (quoting *Husband v. State*, 204 So. 3d 353, 356 (¶10) (Miss. Ct. App. 2016)). Because Cureton failed to object to the proposed instruction, it appears his argument is procedurally barred. *See Windless v. State*, 185 So. 3d 956, 961 (¶11) (Miss. 2015).

¶11. Regardless, this Court will consider the issue for plain error. *Id.* "To determine whether plain error has occurred, the reviewing court must determine: (1) if the trial court deviated from a legal rule; (2) whether that error is plain, clear, or obvious; and (3) whether the error prejudiced the outcome of the trial." *Robinson v. State*, 247 So. 3d 1212, 1226 (¶27) (Miss. 2018), *cert. denied*, 139 S. Ct. 829 (2019). "For the plain-error doctrine to apply, there must have been an error that resulted in a manifest miscarriage of justice or seriously affected the fairness, integrity[,] or public reputation of judicial proceedings." *Husband*, 204 So. 3d at 357 (¶11).

¶12. In particular, Cureton argues the instruction peremptorily instructed the jury to find the steak knife as a deadly weapon. We disagree. The law requires that the jury "must be instructed regarding the elements of the crime with which the defendant is charged." *Hunter v. State*, 684 So. 2d 625, 636 (Miss. 1996). We find that "Jury Instruction S-2" does so. That instruction read as follows:

> The Court instructs the Jury that if you find from the evidence in this case beyond a reasonable doubt that the Defendant, Leonard Cureton, did on or about September 16, 2011, in Lowndes County, Mississippi, unlawfully, willfully, feloniously, purposely and knowingly cause bodily injury to Steven Jennings, a human being, with a deadly weapon, to wit: a knife, by stabbing Steven Jennings with said knife, without authority of law and not in necessary self-defense, then you shall find the Defendant guilty of Aggravated Assault, as charged. If the State has failed to prove any of these elements beyond a

reasonable doubt, then you shall find the Defendant not guilty.

The aggravated-assault statute reads, in pertinent part, "A person is guilty of aggravated assault if he . . . (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm[.]" Miss. Code Ann. § 97-3-7(2). Thus, we find the instruction contained the essential elements outlined the statute: (1) Cureton, on September 16, 2011, in Lowndes County; (2) unlawfully, willfully, feloniously, purposely and knowingly caused bodily injury to Steven Jennings; (3) *with a deadly weapon, to wit: a knife*; (4) by stabbing Steven Jennings with said knife; and (5) without authority of law and not in necessary self-defense. *See Boyd v. State*, 47 So. 3d 121, 124-25 (¶¶11-14) (Miss. 2010).

¶13. Cureton, however, now contends the trial court should have given an instruction that provided the definition of a "deadly weapon." We cannot say a manifest miscarriage of injustice resulted or that the judicial proceedings were seriously affected because that instruction was not given. *See Williams v. State*, 134 So. 3d 732, 737 (¶17) (Miss. 2014).

¶14. In *Williams*, our supreme court dealt with a similar argument in the context of an armed-robbery conviction. *Id.* at 733 (¶1). The disputed jury instruction read as follows:

> The Defendant [Williams], has been charged with the crime of Robbery with a Deadly Weapon, also known as Armed Robbery. If you find from the evidence in this case, beyond a reasonable doubt that:
>
> 1) On or about March 10, 2011, the Defendant [Williams],
>
> 2) Did take from the presence or from the person of [Long],
>
> 3) Certain personal property, being approximately $280.00 in cash money, which was the personal property of the DeSoto County Sheriff's

6

Department, and

4) Such taking was against the will of [Long], and

5) As a means of taking the cash money, [Williams] put [Long] in fear of immediate injury to his person *by the exhibition of a deadly weapon, to-wit: a pistol;*

then you shall find [Williams], guilty of Robbery with a Deadly Weapon.

If the State has failed to prove any one or more of the above listed elements beyond a reasonable doubt, then you shall find the defendant not guilty.

*Id.* at 737 (¶17) (emphasis added). Similar to Cureton, Williams argued the trial court should have defined what legally constitutes a deadly weapon. *Id.* at (¶18). But our supreme court disagreed, finding the jury instruction "set forth all the elements of the crime of armed robbery" and "d[id] not assume or charge the jury that the [weapon] was in fact a deadly weapon." *Id.* at (¶19).

¶15. Likewise, "Jury Instruction S-2" properly set forth the essential elements of aggravated assault. It also clearly allowed the jury to determine whether Cureton employed the use of a deadly weapon. Therefore, we cannot say that "Jury Instruction S-2" was an improper announcement of the law or that it created an injustice to Cureton. As such, the trial court did not abuse its discretion.

**CONCLUSION**

¶16. We affirm Cureton's aggravated-assault conviction and the sentence imposed by the Lowndes County Circuit Court.

¶17. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., WESTBROOKS,**

7

**TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**