# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-00645-COA

**ADREL RYAN TUTWILER A/K/A ADREL TUTWILER**  **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**  **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/13/2014 |
| TRIAL JUDGE: | HON. ROBERT B. HELFRICH |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | GRADY MORGAN HOLDER |
| | ROBERT L. SIRIANNI JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | PATRICIA A. THOMAS BURCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF AGGRAVATED ASSAULT, AND SENTENCED TO TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TWO YEARS SUSPENDED AND EIGHTEEN YEARS TO SERVE, FOLLOWED BY TWO YEARS OF POST-RELEASE SUPERVISION, FINED $2,500, AND REQUIRED TO PAY $3,186.55 TO THE MISSISSIPPI CRIME VICTIMS' COMPENSATION FUND |
| DISPOSITION: | AFFIRMED: 12/08/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., MAXWELL AND JAMES, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.  Adrel Ryan Tutwiler was convicted of aggravated assault for the shooting of

Tranongras Hallmon. Tutwiler appeals his conviction and asserts the trial court erred in: (1) denying his request for a peremptory instruction and his motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial; (2) giving a jury instruction on voluntary intoxication; and (3) denying his motion for a continuance. We find no error and affirm.

FACTS AND PROCEDURAL HISTORY

¶2. Tutwiler and Hallmon lived together in an apartment in Hattiesburg, Mississippi, while the two men attended the University of Southern Mississippi. During the summer of 2012, Hallmon returned home for work while Tutwiler remained in the apartment. Tutwiler testified the friendship between the two men began to deteriorate in the spring and was almost nonexistent through the summer.

¶3. On August 20, 2012, Tutwiler hosted a small gathering, which included Aaliyah Johnson, Ricky Johnson, and Edward Bodie. The members of the party were smoking and drinking when Hallmon and his cousin, Darious Buckley, came into the apartment. Hallmon asked the party to stop smoking inside, then began bringing his belongings into the apartment.

¶4. At some point, Hallmon went into the kitchen and started to place his groceries into the refrigerator. Tutwiler went into the kitchen and saw Hallmon removing some of his food from the refrigerator. Tutwiler and Hallmon began to argue over the food, although Tutwiler and Hallmon disagree on who initiated the confrontation.

¶5. During this disagreement, Tutwiler pulled a gun, and the two men wrestled for control of the gun. At least three shots were fired in the kitchen area before Hallmon ran from the apartment. Tutwiler chased Hallmon and fired at least one shot outside. The eyewitness accounts vary on the number of shots fired, where the shots occurred, and whether Tutwiler purposely aimed at Hallmon. After the incident, Hallmon went to the hospital with several gunshot wounds.

¶6. A Forrest County grand jury indicted Tutwiler for aggravated assault. After a trial, the jury returned a guilty verdict, and the trial court sentenced Tutwiler to twenty years in the custody of the Mississippi Department of Corrections, with two years suspended and eighteen years to serve, followed by two years of post-release supervision. Tutwiler filed a motion for a JNOV or, in the alternative, a new trial. The trial court denied the motion. Tutwiler now appeals.

## ANALYSIS

I. *Whether the trial court erroneously refused Tutwiler's peremptory instruction and denied his motion for a JNOV or, in the alternative, a new trial.*

¶7. In his first issue, Tutwiler claims error in the trial court's refusal of his peremptory instruction that the State failed to prove the necessary elements of the crime. Tutwiler also claims the trial court erred when it denied his motion for a JNOV or, in the alternative, a new trial. Finally, Tutwiler claims the State did not prove that Tutwiler did not act in necessary self-defense.

3

### A. Sufficiency of the Evidence

¶8. A motion for a "judgment notwithstanding the verdict, and a request for a peremptory instruction [both] challenge the legal sufficiency of the evidence presented at trial, and the standard of review for the denial of each is the same." *Jerninghan v. State*, 910 So. 2d 748, 751 (¶6) (Miss. Ct. App. 2005) (citing *Easter v. State*, 878 So. 2d 10, 21 (¶36) (Miss. 2004)). "When reviewing the sufficiency of the evidence, this Court must ask whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Miles v. State*, 956 So. 2d 349, 350 (¶6) (Miss. Ct. App. 2007) (quoting *Shumpert v. State*, 935 So. 2d 962, 966 (¶8) (Miss. 2006)).

¶9. The Mississippi Supreme Court has stated:

> If the facts and inferences so considered point in favor of the defendant with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty, granting the peremptory instruction or [JNOV] is required. On the other hand, if there is substantial evidence opposed to the request or motion – that is, evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair minded men in the exercise of impartial judgment might reach different conclusions – the request or motion should be denied.

*Gavin v. State*, 473 So. 2d 952, 956 (Miss. 1985). Therefore, this Court must determine whether the State proved, beyond a reasonable doubt, that the crime of aggravated assault occurred.

¶10. Specifically, Tutwiler argues that the State did not prove he purposely shot Hallmon as required for aggravated assault. *See* Miss. Code Ann. § 97-3-7(2)(a) (Rev. 2014). To

4

establish intent, we look to the testimony of each eyewitness of the incident. Hallmon, Ricky, and Buckley all testified that Hallmon went into the kitchen, started taking out old items from the refrigerator, and placed his new groceries inside. They also stated that Tutwiler confronted Hallmon about removing his food from the refrigerator. Further, the three men testified that Tutwiler repeatedly put his finger in Hallmon's face, and Hallmon asked him to stop; then, after Hallmon pushed his hand away, Tutwiler pulled a gun from his pants and pointed it at Hallmon. All of the witnesses, except Aaliyah, testified that a fight ensued when Hallmon wrestled with Tutwiler over the gun.

¶11. Aaliyah, who remained in the living room, only briefly saw the fight and did not see Tutwiler with a gun. Aaliyah gave three separate statements to the police with differing accounts as to the number of shots she heard in the kitchen and outside. However, she testified that she heard a gunshot in the kitchen, ran outside, then heard another gunshot outside.

¶12. Hallmon stated that the gun went off in the kitchen, he heard two shots as he ran out of the apartment, and he heard further shooting outside. Hallmon testified he sustained four gunshot wounds, but did not realize this until after he went outside. Ricky testified that he heard one shot inside, but multiple gunshots outside. Buckley testified that Tutwiler fired at Hallmon as he ran outside, and then fired again outside.

¶13. The testimonies of Bodie and Tutwiler differed from the other witnesses regarding the circumstances leading up to the altercation. Both men stated Hallmon came in, began taking

5

Tutwiler's food out of the refrigerator, and, after Tutwiler confronted him, Hallmon shoved Tutwiler. They claimed Tutwiler only pulled the gun out after Hallmon pushed him because he feared for his safety. Tutwiler and Bodie testified that Hallmon weighed much more than Tutwiler, and Hallmon was aggressive. Both agreed that the gun went off while Hallmon and Tutwiler wrestled, but they said Tutwiler did not shoot at Hallmon when he ran away. Bodie testified Tutwiler shot twice outside, but he did not aim at Hallmon. On the other hand, Tutwiler testified he shot just once outside towards the ground.

¶14. In addition to the eyewitness accounts, Detective Steve Hartley and Jeff Byrd, a crime scene technician, testified at trial. Detective Hartley testified that he took witness statements from Aaliyah, Ricky, Buckley, Hallmon, and Tutwiler. Bodie declined to give a statement. Detective Hartley also testified that the eyewitness accounts and the physical evidence at the crime scene were consistent.

¶15. Byrd testified he recovered three bullet casings from the kitchen and one outside. Byrd stated two of the shell casings in the kitchen were near each other but the third casing appeared in another part of the kitchen as if leading outside. Further, Byrd testified he found six live rounds still in Tutwiler's gun, but admitted he did not know the number of bullets the gun could hold.

¶16. Though the testimony differed in some respects, it was substantially consistent. All of the witnesses testified that Tutwiler possessed the gun, and Hallmon did not have a weapon of any kind. Further, all of the witnesses heard at least one gunshot inside the

6

kitchen and at least one gunshot outside, although the exact number of shots in each location varied.

¶17.    Despite these discrepancies, this Court finds the State presented sufficient evidence for the jury to find Tutwiler guilty. "[I]t is well-settled law that the jury determines the credibility of witnesses and resolves conflicts in the evidence." *McClure v. State*, 941 So. 2d 896, 898 (¶4) (Miss. Ct. App. 2006) (citing *Evans v. State*, 725 So. 2d 613, 680-81 (¶293) (Miss. 1997)). No witnesses testified that they saw Tutwiler shoot Hallmon, but they all confirmed that Tutwiler had the gun, and Tutwiler admitted he shot Hallmon. Therefore, the jury could have found Tutwiler intentionally shot Hallmon.

¶18.    Next, Tutwiler also argues that the State failed to prove Hallmon suffered four gunshot wounds. However, Hallmon testified he received four gunshot wounds, and several witnesses stated Hallmon was wounded at the scene. Even Bodie, Tutwiler's witness, testified he saw Hallmon with at least three wounds at the hospital the evening of the incident. In addition, Byrd testified that he recovered four bullet casings from the scene. Therefore, the State provided sufficient evidence for the jury to find Tutwiler shot Hallmon four times during the incident.

¶19.    This Court finds the evidence sufficient to affirm the denial of Tutwiler's motion for a JNOV. We also determine the trial court properly denied Tutwiler's request for a peremptory instruction. This issue is without merit.

    B.    *Weight of the Evidence*

¶20. Additionally, Tutwiler challenges the trial court's denial of his motion for a new trial. "This Court reviews a denial of a motion for a new trial for abuse of discretion." *Conner v. State*, 138 So. 3d 158, 168 (¶33) (Miss. Ct. App. 2013) (citing *Rutland v. State*, 60 So. 3d 137, 142 (¶18) (Miss. 2011)). When this Court reviews "a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush v. State*, 895 So. 2d 836, 844 (¶18) (Miss. 2005) (citation omitted). With this standard in mind, this Court should weigh the evidence in the light most favorable to the verdict. *Id.*

¶21. The State presented evidence that Tutwiler possessed the gun, Hallmon was unarmed, gunshots occurred in the kitchen and outside, Tutwiler pursued Hallmon, and Hallmon received four gunshot wounds. Further, Tutwiler admitted shooting Hallmon, though he argued self-defense. But the State showed that Tutwiler possibly shot Hallmon after Hallmon ran from the fight. One of the bullet casings landed in a different part of the kitchen, which, as Byrd testified, led out of the apartment. Also, Tutwiler fired at least one shot outside after pursuing Hallmon.

¶22. Based on the testimony and the physical evidence, the weight of the evidence supported the jury's verdict. As such, the trial court did not abuse its discretion in denying Tutwiler's motion for a new trial. This issue is meritless.

        C.    *Self-Defense Claim*

¶23. Tutwiler claims the State failed to prove he did not act in necessary self-defense. "[T]he defendant is not required to prove that he acted in self-defense, and, if a reasonable doubt of his guilt arises from the evidence, including evidence of self-defense, he must be acquitted." *Steele v. State*, 852 So. 2d 78, 81 (¶17) (Miss. Ct. App. 2003) (quoting *Sloan v. State*, 368 So. 2d 228, 229 (Miss. 1979)). Tutwiler testified he shot Hallmon in self-defense because he feared for his life.

¶24. "A successful self-defense argument requires that the jury believe that it was objectively reasonable for the defendant to believe he was in danger of imminent death or serious bodily harm." *Wilder v. State*, 118 So. 3d 628, 631 (¶9) (Miss. Ct. App. 2012) (quoting *Livingston v. State,* 943 So. 2d 66, 71 (¶13) (Miss. Ct. App. 2006)). "The question of whether the defendant acted in self-defense is a question for the jury to resolve." *Id.* (citing *Dubose v. State,* 919 So. 2d 5, 7 (¶11) (Miss. 2005)). Yet Tutwiler could not explain why he feared for his life, ran after Hallmon, or fired a shot outside after the fight essentially ended. Though he had allegedly fought with Hallmon in the past, Tutwiler provided no reason for his belief that Hallmon would harm him. Further, Hallmon did not possess a weapon, which weighs against Tutwiler's assertion of self-defense. Based on Tutwiler's testimony, the jury reasonably found he did not act in self-defense.

¶25. The sufficiency of the evidence supports the trial court's denial of Tutwiler's motion for a JNOV and a peremptory instruction. Also, the guilty verdict was not contrary to the weight of the evidence, and the State disproved Tutwiler's self-defense argument. Therefore,

this Court finds these claims meritless.

> II. *Whether the trial court erred in giving an instruction on voluntary intoxication when the issue was not raised at trial.*

¶26. Tutwiler also argues that the trial court improperly gave an instruction that voluntary intoxication did not serve as a defense to the crime when neither party raised the issue. The State counters that the issue of intoxication arose when Tutwiler admitted to drinking prior to the incident.

¶27. "Jury instructions are within the discretion of the trial court and the settled standard of review is abuse of discretion." *Watkins v. State*, 101 So. 3d 628, 633 (¶16) (Miss. 2012) (citation omitted). "[I]instructions are to be read together and taken as a whole with no one instruction taken out of context." *Johnson v. State*, 19 So. 3d 145, 147 (¶10) (Miss. Ct. App. 2009) (quoting *Poole v. State*, 826 So. 2d 1222, 1230 (¶27) (Miss. 2002)). "When read together, if the jury instructions state the law of the case and create no injustice, then no reversible error will be found." *Watkins*, 101 So. 3d at 633 (¶16) (citation omitted).

¶28. Tutwiler objected to the State's instruction on voluntary intoxication because he did not raise it as a defense. The Mississippi Supreme Court "held in *Lee v. State*, 403 So. 2d 132 (Miss. 1981), that generally speaking[,] a jury should not be instructed on the question of voluntary intoxication because such instructions can be confusing and misleading to the jury." *Baggett v. State*, 793 So. 2d 630, 636 (¶18) (Miss. 2001). However, "[a] voluntary intoxication instruction is proper when the defendant has made intoxication an issue." *Id.* at (¶19).

10

¶29.     The supreme court in *Lee* held the *McDaniel*[1] rule's purpose "is to remove voluntary intoxication as a defense, not to provide an affirmative instruction for the [S]tate[,] which might mislead a jury into thinking that it is not necessary to prove intent, when intent is a requisite ingredient of the offense." *Lee,* 403 So. 2d at 134.  The trial court here, however, found the instruction reflected "a correct statement of the law" and "there was enough testimony dealing with intoxication."

¶30.     "If the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." *Lawrence v. State,* 3 So. 3d 754, 758 (¶19) (Miss. Ct. App. 2008) (citation omitted).  *Lawrence* is instructive.  This Court found that the jury instruction on voluntary intoxication was proper even though the defendant did not raise voluntary intoxication as a defense.  *Id.* at 759 (¶¶21, 23).  The trial court ruled that because the evidence was not circumstantial and "there was evidence presented of possible intoxication, [then] the jury instruction was not interjecting an extraneous matter that could intolerably heighten jury confusion." *Id.* at (¶22).  Here, the trial court found ample evidence of possible intoxication as all of the witnesses at the scene testified to the presence of alcohol, and Tutwiler admitted he consumed alcohol before the altercation.

¶31.     Because we find the evidence was sufficient to sustain a guilty verdict and ample evidence of intoxication existed in the record, the trial court did not err in giving an

---

[1] In *McDaniel v. State*, 356 So. 2d 1151, 1161 (Miss. 1978), the supreme court held that voluntary intoxication could not be a defense to a specific-intent crime, and prohibited the use of jury instructions stating voluntary intoxication was a defense.

11

instruction on voluntary intoxication. This issue is without merit.

> III. *Whether the trial court erred in denying Tutwiler's oral motion for a continuance.*

¶32. Lastly, Tutwiler claims the trial court erroneously denied his oral motion for a continuance during the trial when he felt his attorney had failed to prepare for trial. "The decision to grant or deny a motion for a continuance is within the sound discretion of the trial court and will not be reversed unless the decision results in manifest injustice." *Jones v. State*, 995 So. 2d 146, 152 (¶17) (Miss. Ct. App. 2008) (quoting *Ross v. State*, 954 So. 2d 968, 1007 (¶91) (Miss. 2007)). "To satisfy the burden of showing manifest injustice, the defendant must 'show concrete facts that demonstrate the particular prejudice to the defense.'" *Id.* (quoting *Salts v. State*, 984 So. 2d 1050, 1060 (¶25) (Miss. Ct. App. 2008)).

¶33. After the State's first three witnesses, Tutwiler sought a continuance because he felt uncomfortable with his attorney and believed his attorney did not prepare. Tutwiler told the trial court that his attorney did not have the witness list, but counsel denied this accusation. Further, counsel responded that he had time to prepare for the case.

¶34. The trial court appointed counsel in August 2013. Counsel requested a continuance on December 20, 2013, seeking additional time for preparation, which the trial court granted. By the time of the trial on March 11, 2014, counsel had seven months to prepare and he assured the trial court that he was ready to proceed with trial. The supreme court has previously upheld denials of motions for continuances when attorneys had far shorter time periods to prepare than in this case. *See Stack v. State*, 860 So. 2d 687, 692 (¶9) (Miss.

12

2003).

¶35.    Additionally, Tutwiler was indicted on March 14, 2013, and his trial was nearly one year later. This time afforded Tutwiler the opportunity to obtain private counsel. "Although the right to counsel is absolute, the right to counsel of choice is not absolute." *Harris v. State*, 999 So. 2d 436, 438 (¶15) (Miss. Ct. App. 2009) (citing *Atterberry v. State*, 667 So. 2d 622, 630 (Miss. 1995)). "The right to choose counsel may not be used to thwart the progress of a trial." *Id.* (citation omitted). Tutwiler denied that he sought a continuance for new counsel merely because he did not like the progression of the trial. However, Tutwiler failed to demonstrate any prejudice based on his attorney's performance.

¶36.    Tutwiler primarily argues prejudice due to his attorney's failure to meet with him prior to the morning of trial. Yet Tutwiler does not show how this delayed meeting resulted in prejudice. All of the witnesses present during the incident testified at trial, Bodie testified on Tutwiler's behalf, and counsel presented evidence for Tutwiler's defense. Further, Tutwiler testified in order to present his version of the events. Tutwiler cannot demonstrate how meeting with his attorney prior to the morning of the trial would have caused a different result so as to constitute a manifest injustice. Under these facts, we find that the trial court did not err in its denial of Tutwiler's motion for a continuance.

¶37.    The trial court did not err in denying Tutwiler's motions for a new trial, a JNOV, or a continuance. Further, the trial court properly admitted the jury instruction for voluntary intoxication and denied Tutwiler's peremptory instruction. Therefore, this case is affirmed.

13

¶38.    THE JUDGMENT OF THE FORREST COUNTY CIRCUIT COURT OF CONVICTION OF AGGRAVATED ASSAULT, AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TWO YEARS SUSPENDED AND EIGHTEEN YEARS TO SERVE, FOLLOWED BY TWO YEARS OF POST-RELEASE SUPERVISION, A FINE OF $2,500, AND A PAYMENT OF $3,186.55 TO THE MISSISSIPPI CRIME VICTIMS' COMPENSATION FUND, IS AFFIRMED.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.

LEE, C.J., IRVING, P.J., BARNES, ISHEE, CARLTON, MAXWELL, FAIR AND WILSON, JJ., CONCUR.  JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.