# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-00330-COA

ARTEA CHILTON                                                         APPELLANT

v.

STATE OF MISSISSIPPI                                                   APPELLEE

DATE OF JUDGMENT:                03/03/2014
TRIAL JUDGE:                     HON. ROBERT B. HELFRICH
COURT FROM WHICH APPEALED:       FORREST COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:          OFFICE OF STATE PUBLIC DEFENDER
                                 BY: HUNTER NOLAN AIKENS
ATTORNEY FOR APPELLEE:           OFFICE OF THE ATTORNEY GENERAL
                                 BY: BARBARA WAKELAND BYRD
DISTRICT ATTORNEY:               PATRICIA A. THOMAS BURCHELL
NATURE OF THE CASE:              CRIMINAL - FELONY
DISPOSITION:                     AFFIRMED - 10/31/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE GRIFFIS, P.J., WILSON AND WESTBROOKS, JJ.

### WESTBROOKS, J., FOR THE COURT:

¶1.    Artea Chilton was indicted on one count of armed robbery using a deadly weapon. After a jury trial, Chilton was found guilty of armed robbery, and the Forrest County Circuit Court sentenced him to twenty-five years in the custody of the Mississippi Department of Corrections (MDOC), with twenty years to serve, and five years of postrelease supervision (PRS), and to pay a $5,000 fine. After sentencing, Chilton filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial, which the court denied after a hearing. After our review of the record, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2. On October 19, 2012, Chilton, driving a red Mustang, picked up Darisha Johnson from her apartment complex to take her to get something to eat. Johnson testified that Chilton instead drove to McMullan Motors and spoke with one of the salesmen. The salesman was later identified as Dewayne Morris.

¶3. Morris testified that Chilton wanted to look at the fastest and most expensive car at the dealership. Morris directed Chilton to a Dodge Charger that was on display inside of the dealership. Morris discussed a listing price of $55,000, but explained to Chilton that he could possibly sell the car for $50,000 if Chilton paid cash. Both Chilton and Morris testified that Chilton responded that he was going to the bank to retrieve the cash for the car, and that he would be right back.

¶4. Johnson testified that she and Chilton left McMullan Motors and drove to a BancorpSouth. Chilton, dressed in all black and wearing a mask[1] on the back of his head, walked into the BancorpSouth and cut in front of one of the customers, who was later identified as Cleveland Collins. From there, witnesses testified that Chilton loudly asked a teller who the owner of the bank was. The teller, identified at trial as "Clayton" or "Clay," directed Chilton to Tina Gibbs, the branch manager.

¶5. Gibbs testified that Chilton walked into her office and stated that he wanted money because he was going to buy a Dodge. Gibbs testified that she felt a bit uneasy because of

---

[1] The mask Chilton was wearing is known as the "Guy Fawkes" mask. It is perhaps best known as the mask appearing in the movie *V for Vendetta*.

Chilton's demeanor and appearance, and she initially thought Chilton was robbing the bank until he mentioned the car. Therefore, she asked Chilton whether he wanted a loan. Gibbs testified that Chilton responded that he did not need a loan. Gibbs stated that he wanted all of the money, and that he was robbing the bank. By this time, Gibbs had pressed the silent alarm located on the side of her desk.

¶6.     Gibbs later testified that Chilton said he had a gun, and gestured as though it was in his pocket. However, Gibbs stated she never actually saw Chilton's gun.[2] After this brief exchange in her office, Gibbs stepped out and informed the tellers that Chilton was robbing the bank.

¶7.     Candisha Campbell, a teller at the bank, testified that Gibbs instructed the tellers to hand Gibbs "bait money." Michelle Long, another teller at BancorpSouth, testified that she gave Gibbs bait money – the money typically given during a robbery.

¶8.     After Gibbs retrieved the bag of bait money, she handed it to Chilton. Witnesses testified that Chilton told everyone to "have a good weekend" before exiting the bank.

¶9.     Johnson testified that Chilton appeared calm as he entered the car, and that he had a bag of money with him. Johnson stated that she did not feel that anything was wrong until the police started following behind the car trying to cut them off. Johnson said that Chilton started going through the bag and money and throwing some of the money out of the window. Chilton later testified that the money had trackers in it. As soon as she got the

---

[2] A gun was never recovered from the scene or from Chilton's car.

3

chance, Johnson jumped out of the car and ran to an auto parts store. Johnson also tried to flag down Chief Charles Bolton of the Hattiesburg Police Department; however, he was in pursuit of Chilton. A few moments later, Chilton was apprehended.

¶10. Sergeant Laron Smith later testified that he received a call regarding a possible robbery. He stated that he and other officers were following behind a red Mustang until another officer cut off the Mustang's route. Sergeant Smith further stated that Chilton was noncompliant with commands to get out of the car. Sergeant Smith said that several officers had to remove Chilton from the vehicle.

¶11. Chilton and Johnson were arrested and charged with armed robbery. However, the grand jury did not return an indictment against Johnson. At trial, Chilton denied that he intended to rob the bank. He said he never told Gibbs that he had a gun, and he only wanted to discuss financing options regarding the Dodge. According to Chilton, he threw out the trackers because he was scared. Chilton further stated that he knew taking the money was wrong, but he did not understand how loans worked at a bank.

¶12. Following a two-day trial, Chilton was convicted of armed robbery. He was sentenced to twenty-five years in the custody of the MDOC, with twenty years to serve, followed by five years of PRS and to pay a $5,000 fine. Following his unsuccessful posttrial motions, he appeals and claims: (1) the indictment was fatally defective; (2) the circuit court erred when it gave jury instruction S-4; (3) the circuit court erred when it gave jury instruction S-1A; (4) there was insufficient evidence to convict him, and the verdict is against the overwhelming

4

weight of the evidence; and (5) the circuit court erred in prohibiting him from introducing a video into evidence.

**DISCUSSION**

I. **Whether the indictment was fatally defective.**

¶13.    Chilton argues that the indictment was fatally defective because it failed to charge him with "the exhibition of a deadly weapon." "The [reviewing] Court affords [a] de novo review to a claim that an indictment was fatally defective for failure to include an essential element." *Warren v. State*, 187 So. 3d 616, 621 (¶10) (Miss. 2016) (citation omitted). "The ultimate test, when considering the validity of an indictment on appeal, is whether the defendant was prejudiced in the preparation of his defense." *Id.* at 621-22 (¶10).

¶14.    "All objections to an indictment for a defect appearing on the face thereof, shall be taken by demurrer to the indictment . . . before the jury shall be impaneled . . . and not afterward . . . ." *Brown v. State*, 37 So. 3d 1205, 1209 (¶9) (Miss. Ct. App. 2009) (quoting Miss. Code Ann. §99-7-21 (Rev. 2007)). "Further, the Mississippi Supreme Court has held that where a deficiency appearing in an indictment is non-jurisdictional, it may not be raised for the first time on direct appeal absent a showing of cause and actual prejudice." *Id.* (citations and quotation marks omitted). Deficiencies are jurisdictional "where the indictment fails to charge a necessary element, and where there exists no subject matter jurisdiction." *Id*. at 1210 (¶9).

¶15.    The indictment against Chilton charged:

5

[O]n . . . October 19, 2012, [he] did willfully, unlawfully, and feloniously take, steal, and carry away from the person and/or the presence of, and against the will of Tina Gibbs, approximately $1,510.00 in U.S. Currency, the personal property of the said Tina Gibbs by virtue of her employment at BancorpSouth, 713 Broadway Drive, Hattiesburg, Mississippi, by putting [her] in fear of immediate injury, *by stating that he was armed with a gun*, contrary to the form of the statue in such cases made and provided, and against the peace and dignity of the State of Mississippi.

(Emphasis added).

¶16. "An indictment must contain (1) the essential elements of the crime charged, (2) sufficient facts to fairly inform the defendant of the charge which he must defend, and (3) sufficient facts to enable him to plead double jeopardy in the event of a future prosecution for the same offense." *Warren*, 187 So. 3d at 621 (¶10) (citation omitted). "Rule 7.06 of the Uniform Rules of Circuit and County Court Practice[3] states, in pertinent part, that 'the indictment upon which the defendant is to be tried shall be a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation.'" *Id*.

¶17. In *Dambrell v. State*, 903 So. 2d 681, 689 (¶32) (Miss. 2005), the supreme court held:

[W]hen a defendant makes an overt act and a reasonable person would believe that a deadly weapon was present, then the intent of the statute has been met for conviction purposes. In other words, if a defendant makes an overt act, a victim does not have to actually see a deadly weapon. So long as the victim reasonably believes that the defendant had a deadly weapon and the defendant makes an overt act the statute is satisfied.

---

[3] Effective July 1, 2017, Rule 7.06 was replaced with Rule 14.1(a) of the Mississippi Rules of Criminal Procedure. But because the proceedings in this case preceded this charge, the former rule applies here.

6

*Id.* at 689 (¶32).

¶18.    Accordingly, we find that the evidence presented supports a charge of armed robbery.

Chilton was adequately put on notice that the State would attempt to prove that he committed

armed robbery. Chilton's indictment referenced Mississippi Code Annotated section 97-3-79

(Rev. 2014), and the title of the indictment stated "armed robbery."

¶19.    Section 97-3-79 reads as follows:

> Every person who shall feloniously take or attempt to take from the person or
> from the presence the personal property of another and against his will by
> violence to his person or by putting such person in fear of immediate injury to
> his person by the exhibition of a deadly weapon shall be guilty of robbery . . . .

¶20.    The supreme court has held that "although use of the statutory language is generally

sufficient, using the exact language from the statute is not necessary if the words used have

substantially the same meaning and the indictment is specific enough to give the defendant

notice of the charge against [him]." *State v. Hawkins*, 145 So. 3d 636, 640 (¶8) (Miss. 2014).

¶21.    Rule 7.06 discusses indictments and enumerates seven items that must be included in

every indictment:

> The indictment upon which the defendant is to be tried shall be a plain,
> concise[,] and definite written statement of the essential facts constituting the
> offense charged and shall fully notify the defendant of the nature and cause of
> the accusation. Formal and technical words are not necessary in an indictment,
> if the offense can be substantially described without them. An indictment shall
> also include the following:
>
> 1.    The name of the accused;
>
> 2.    The date on which the indictment was filed in court;

7

3.    A statement that the prosecution is brought in the name and by the authority of the State of Mississippi;

4.    The county and judicial district in which the indictment is brought;

5.    The date and, if applicable, the time at which the offense was alleged to have been committed. Failure to state the correct date shall not render the indictment insufficient;

6.    The signature of the foreman of the grand jury issuing it; and

7.    The words "against the peace and dignity of the state."

¶22.    Taken as a whole, Chilton's indictment provided a clear explanation of the charges from which Chilton could prepare his defense. The indictment was not fatally defective because it did not include the phrase "exhibition of a deadly weapon." Therefore, this issue is without merit.

## II.    Whether the circuit court erred in giving jury instruction S-4.

¶23.    Chilton asserts that jury instruction S-4 impermissibly commented on the weight of the evidence, was argumentative, and deprived him of a fair trial and objective consideration of the evidence by the jury. "Jury instructions are within the discretion of the trial court and the settled standard of review is abuse of discretion." *Tutwiler v. State*, 197 So. 3d 418, 424 (¶27) (Miss. Ct. App. 2015) (citation omitted). "Instructions are to be read together and taken as a whole with no one instruction taken out of context." *Id*. (citations and quotation marks omitted). "When read together, if the jury instructions state the law of the case and create no injustice, then no reversible error will be found." *Id*. at 425 (¶27).

¶24.    Jury Instruction S-4 stated:

8

The Court instructs the jury that when a defendant makes an overt act and a reasonable person would believe that a deadly weapon is present, there is no requirement that a victim must actually see the deadly weapon. Therefore, if you believe from the evidence in this case that the Defendant, ARTEA CHILTON, intended for TINA GIBBS to believe that he was exhibiting a deadly weapon; to wit: a gun; and if you believe from the evidence in this case that Tina Gibbs did believe that . . . Chilton[], was exhibiting . . . a gun then you may conclude that . . . a gun[] was exhibited.

¶25. At trial, Chilton objected to the use of this instruction; however, the circuit court found that the instruction was the correct statement of the law and granted the instruction. We agree.

¶26. In *Williams v. State*, 134 So. 3d 732 (Miss. 2014), the supreme court analyzed a similar instruction given by a trial court. The instruction at issue in *Williams* provided that "[w]hen a defendant makes an overt act and the victim reasonably believes that the defendant has a deadly weapon, it is not required that the victim actually see a deadly weapon to support a conviction for armed robbery." *Id*. at 738 (¶20). The supreme court affirmed the use of this language in the instruction. *Id*. at (¶24).

¶27. Chilton patted his pants leg to signal that he had a gun. Furthermore, Chilton informed Gibbs that he had a gun in his pants. Therefore, we find that the circuit court did not abuse its discretion by allowing jury instruction S-4. Accordingly, this issue is without merit.

**III.    Whether the circuit court erred in giving jury instruction S-1A.**

¶28. Chilton argues that jury instruction S-1A failed to instruct the jury on essential elements of the crime of armed robbery: namely (1) the "exhibition" of a deadly weapon and

(2) felonious intent.

¶29.    Chilton did not object to this instruction at trial.  He raises this argument for the first time on appeal.  The "failure to object to jury instructions at trial procedurally bars the issue on appeal." *Hawthorne v. State*, 835 So. 2d 14, 19 (¶20) (Miss. 2003) (citation omitted). Notwithstanding the procedural bar, this Court finds no error with the use of jury instruction S-1A.

¶30.    Jury Instruction S-1A stated:

The DEFENDANT, ARTEA CHILTON, has been charged with the crime of Armed Robbery.  If you find from the evidence in this case beyond a reasonable doubt that in Forrest County, Mississippi:

(1)     Th[at] approximately $1510.00 in U.S. currency was the personal property of Tina Gibbs of which she was in lawful possession of [sic] by virtue of her employment at BancorpSouth; and

(2)     On or about October 19, 2012, the Defendant took the said property of Tina Gibbs, from (his/her) person and/or presence of and against the will of Tina Gibbs by placing Tina Gibbs in fear of immediate injury to his person, by indicating he had a deadly weapon, to-wit: a handgun; and

(3)     That said taking was against the will of Tina Gibbs;

then you shall find the Defendant, ARTEA CHILTON, guilty of Armed Robbery.

If the State has failed to prove any or more of these elements beyond a reasonable doubt, then you shall find the Defendant not guilty of Armed Robbery.

If you find the Defendant, ARTEA CHILTON, not guilty of the crime of Armed Robbery, you may consider whether the Defendant is guilty of the lesser included offense of Robbery, and if you find from the evidence beyond

10

a reasonable doubt that in Forrest County, Mississippi:

(1)     Th[at] approximately $1510.00 in U.S. currency was the personal property of Tina Gibbs of which she was in lawful possession of [sic] by virtue of her employment at BancorpSouth; and;

(2)     On or about October 19, 2012, the Defendant took the said property of Tina Gibbs, from (his/her) person and/or presence of and against the will of Tina Gibbs by putting Tina Gibbs in fear of some immediate injury to her/his person, but without the exhibition of a deadly weapon; and,

(3)     that said taking was against the will of Tina Gibbs;

then you shall find the Defendant, ARTEA CHILTON, guilty of Robbery.

If the State has failed to prove any one or more of these elements you shall find the Defendant not guilty.

¶31.    "Robbery has three essential elements:   (1) felonious intent, (2) force or putting in fear as a means of effectuating the intent, and (3) by that means taking and carrying away the property of another from his person or in his presence."  *Veazy v. State*, 113 So. 3d 1226, 1229 (¶11) (Miss. 2013) (citation omitted).  "Armed robbery requires the additional element of exhibition of a deadly weapon."  *Id*.  "The law, of course, requires [that] the jury must be instructed regarding the elements of the crime which the defendant is charged."  *Williams*, 134 So. 3d at 737 (¶17) (quotation marks omitted).

¶32.    However, the supreme court has "expressly recognized that the word 'rob' or 'robbery' has a well-defined meaning which includes an intent to steal."  *Lannom v. State*, 464 So. 2d 492, 496 (Miss. 1985).  The supreme court has also upheld past jury instructions that did not contain the words "felonious intent."  *Id*.  These instructions "allow[] the jury

11

to convict only upon evidence from which they could believe beyond a reasonable doubt that the defendant feloniously and violently robbed the victims." *Id*.

¶33.   The absence of the words "felonious intent" had no effect on the State's burden of proof.  We find that the jury was properly instructed as to the State's burden of proving that Chilton committed armed robbery under section 97-3-79.  Moreover, we find that jury instruction S-1A tracks the language of the statute.

¶34.   Further, this Court has already determined that Chilton's argument regarding the missing element of "exhibition of a deadly weapon" is meritless.

**IV.   Whether the evidence supports the verdict, or alternatively, whether the verdict was against the overwhelming weight of the evidence.**

*A.   Sufficiency of the Evidence*

¶35.   Chilton argues that the evidence was insufficient to support the jury's verdict, because the evidence failed to prove beyond a reasonable doubt that he acted with "felonious intent" or that he "exhibited a deadly weapon."  "To consider on appeal an argument that evidence is insufficient to uphold [a] conviction, [this Court must] examine all of the evidence presented to the fact-finder, including reasonable inferences that arise from other evidence, in the light that is consistent with the verdict of guilt." *Cannady v. State*, 855 So. 2d 1000, 1002 (¶6) (Miss. Ct. App. 2003).  Accordingly, "we reverse only if rational and fair-minded jurors could not have found the defendant guilty beyond a reasonable doubt." *Id*. (citation omitted).

12

¶36. The State presented evidence that Chilton walked into the bank with the intent to rob it. Gibbs testified that Chilton sat in her office, informed her that he was robbing the bank, and said that he had a gun. Based off of Gibbs's fear, she collected "bait money" and gave it to Chilton. Further, the bag of bait money was found on the seat of the car following Chilton's arrest.

¶37. Chilton asserts the State did not prove "felonious intent." However, Gibbs testified that Chilton told her he was robbing the bank. Furthermore, Chilton took the money from Gibbs, exited the bank, and began to throw the money with the trackers out of the window.

¶38. Chilton further asserts that the State did not prove that he "exhibited" a deadly weapon. However, we have determined that this argument lacks merit.

### B. Weight of the Evidence

¶39. Chilton asserts the verdict was against the overwhelming weight of the evidence and that affirming his conviction would sanction an unconscionable injustice. We disagree. This Court's standard of review for claims that a conviction is against the overwhelming weight of the evidence is "that [we] must accept as true the evidence which supports the verdict[,] and will reverse only when [we are] convinced that the circuit court has abused its discretion in failing to grant a new trial." *Boose v. State*, 851 So. 2d 391, 395 (¶20) (Miss. Ct. App. 2003).

¶40. Considering the evidence previously mentioned in this opinion, we find that the verdict is not so contrary to the overwhelming weight of the evidence that allowing it to stand

13

would sanction an unconscionable injustice.  Therefore, we find this issue to be without merit.

### V.    Whether the trial court abused its discretion by prohibiting Chilton from introducing a video into evidence.

¶41.    Chilton contends that the trial court erred by prohibiting him from introducing a music video he recorded three days before the armed robbery.  "Th[e reviewing c]ourt reviews the trial court's decision to admit or exclude evidence under an abuse of discretion standard of review."  *Smith v. State*, 986 So. 2d 290, 295 (¶12) (Miss. 2008).

¶42.    Chilton asserts that the video shows that he was wearing the same mask and clothes in the music video that he was wearing the day of the robbery.  He asserts that the video explains why he was wearing a mask.[4]  The trial court found that the video was irrelevant.  According to Chilton, he was not able to fully present his defense.  He also claims that the tape was relevant.  We disagree.

¶43.    "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  M.R.E. 401.[5]  Additionally, "evidence [that] is not relevant is not admissible."  M.R.E. 402.

---

[4] Chilton had worn the mask in the music video, and he was excited about filming a music video.

[5] Effective July 1, 2016, the Mississippi Rules of Evidence were restyled.  Though these changes were nonsubstantive, we have quoted the former rule in effect when Chilton was tried.

¶44. The trial court properly determined that the music video was not relevant, and therefore, inadmissible. There was no conflicting testimony regarding what Chilton was wearing the day of the robbery. Moreover, Johnson testified that it was not unusual for Chilton to wear masks, because he was a bit "weird." As such, there was evidence implying that Chilton did not necessarily wear the mask in the bank to conceal his identity. Therefore, it was inconsequential that Chilton appeared to have the same mask and clothes on from the video during the robbery. Moreover, witnesses testified that Chilton never used the mask during the armed robbery. He simply wore it on the back of his head until he was apprehended by police.[6] Accordingly, we find no abuse of discretion in the trial court's decision to exclude the videotape.

¶45. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR AND GREENLEE, JJ., CONCUR. WILSON, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. TINDELL, J., NOT PARTICIPATING.**

---

[6] Chilton testified that he pulled the mask over his face after being stopped by police.